UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MATTHEW H.,[1]

    **Plaintiff,**

v.

    Case No. 3:20-cv-0241
    Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Matthew H. for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 11, *Defendant's Memorandum in Opposition*, ECF No. 15, *Plaintiff's Reply*, ECF No. 16, and the *Certified Administrative Record*, ECF No. 9. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court grants *Plaintiff's Statement of Errors* and reverses the Commissioner's decision and remands the action for the grant of benefits.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.
[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

I.     PROCEDURAL HISTORY

On December 19, 2016, Plaintiff filed his current application for benefits, alleging that he has been disabled since that date as a result of physical and mental impairments. R. 214-20.[3] The application was denied initially and upon reconsideration, and Plaintiff sought a *de novo* hearing before an administrative law judge. Administrative Law Judge ("ALJ") Laura S. Twilley held a hearing on February 28, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35-65. In a decision dated April 25, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time since the date on which the application was filed through the date of that decision. R. 15-29. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on May 5, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 18. The matter is ripe for disposition.

II.    LEGAL STANDARD

   A.     **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the

---

[3] The Court will refer to pages in the Certified Administrative Record as "R. __," using the pagination as it appears in the Certified Administrative Record.

substantial evidence standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

Following review of the entire record on appeal from a denial of benefits, a court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991). Remand for an award of benefits, however, is appropriate "only if all

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs,* 17 F.3d 171, 176 (6th Cir. 1994).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 416.920(a)(4). "The claimant bears the burden of proof through step four; at step five, the burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.    ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 50 years old on the date on which the application was filed. R. 27. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since that date. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, seizure disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, arthritis, and neurocognitive disorder. R 18. The ALJ also found that Plaintiff's alleged right eye blindness and acid reflux were not severe. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. *Id.*

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work that did not involve, *inter alia*, over-the-shoulder supervision. R. 20. The ALJ also found

that this RFC did not permit the performance of Plaintiff's past relevant work. R. 27.

At step five, the ALJ referred to the testimony of the vocational expert to find that a significant number of jobs exist in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. *Id*. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from the application date through the date of the decision. R. 28.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits. *Plaintiff's Statement of Errors,* ECF No. 11; *Plaintiff's Reply Brief*, ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 15.

## IV.   RELEVANT EVIDENCE

Because the Court concludes that the ALJ erred at step five of the sequential evaluation, in connection with Plaintiff's ability to work with no over-the-shoulder supervision, the Court will address only that issue and the evidence relevant to that issue.

Plaintiff alleged, and the ALJ found, that Plaintiff suffers from a number of severe mental impairments. He testified at the administrative hearing that he has difficulty remembering things. R. 52. He finds that being around other people is increasingly difficult: "I'm nice, but I do get agitated, you know?" R. 53, 54.

In March 2014, Plaintiff began psychiatric treatment with Jeffrey Bishop, M.D., who diagnosed an anxiety disorder and prescribed medication. R. 323-56, 399-404.[4]

In March 2017, Plaintiff underwent a consultative psychological examination by Gordon Harris, Ph.D., upon referral from the state agency. R. 360-65. Dr. Harris observed that Plaintiff was pleasant and cooperative and exhibited no unusual emotional behaviors. R. 360. Plaintiff reported that he was homeless and stated that he has been depressed "for a long time" and had had suicidal and homicidal thoughts. R. 361. He also reported auditory and visual hallucinations. *Id*. On clinical examination, Plaintiff's mood was described as euthymic and his affect as normal and appropriate. R. 363. He had significant memory deficits. His attention and concentration were generally good, his persistence was adequate and his pace was significantly slowed. R. 364. His insight was limited and his judgment was fair. R. 363. Addressing Plaintiff's ability to respond appropriately to supervision and co-workers, Dr. Harris stated, "He is now socially withdrawn and would likely have significant difficulties dealing with both supervisors and co-workers in a work environment." R. 364. Plaintiff's "cognitive difficulties would limit his ability to tolerate the pressures of a workplace." *Id*.

In April 2017, Bruce Goldsmith, Ph.D., reviewed the record on behalf of the state agency and opined that Plaintiff would be limited to simple, routine task instructions, and would be "capable of brief and superficial interactions with general public, supervisors and co-workers. Would do best in worksites in which he could work relatively independently and without close over-the-shoulder supervision." R. 96. On reconsideration in July 2017, Leslie Rudy, Ph.D., opined that Plaintiff is "capable of keeping up with 1-4 step tasks and a work environment that

---

[4] Plaintiff testified at the administrative hearing that he no longer receives mental health treatment because he has no medical insurance. R. 53.

does not require work at a rapid pace;" and is "capable of brief and superficial interactions with general public, supervisors and co-workers." R. 116.

Plaintiff has also participated in counseling sessions since 2016 with William Lavanche, M.Ed. R. 701-30, 757-76. In a June 2017 response to the state agency, Mr. Lavanche reported a depressed and anxious mood and blunted and flat affect. R. 383. According to Mr. Lavanche, Plaintiff suffers from a long term memory impairment and severely limited insight. *Id*. Mr. Lavanche diagnosed PTSD, recurrent depression, and an anxiety disorder, nos. R. 384. Plaintiff is "markedly" limited in his ability to sustain concentration, persistence, and pace, and is "severely" impaired in his ability to engage in social interaction: "antisocial [history] of severe aggression w/ slight provocation." *Id*.

At the administrative hearing, the ALJ asked the vocational expert to assume a claimant with Plaintiff's vocational profile and an RFC for light work with additional limitations, including, *inter alia*, "[n]o over the shoulder supervision or tandem or teamwork. Occasional interaction with co-workers, supervisors and the general public." R. 61. In response, the vocational expert testified that such a claimant could work in such jobs as photocopy machine operator, merchandise marker, and routing clerk, of which there are significant numbers in the national economy. R. 60, 61. Plaintiff's counsel and the vocational expert then had the following exchange, however:

> Q. You had mentioned a few moments ago the training or probationary of these jobs. Is it safe to assume that at least at some point during that probationary period, there would be at least some minimal over the shoulder supervision while the employee was learning to meet the demands of the job and learning the tasks of the job?
> A. In unskilled work, they would be expected, and again, it could vary anywhere from 30 days at an SVP of 2, the expectation is you're ready to go in 30 days, but some companies, in fact most in unskilled work, will use a temporary agency and they usually have a duration of 90 days. So, yes, there is going to be additional supervision during that initial period with the expectation of anywhere

> from 30 to 90 days with the expectation that they're good to go after that period without additional supervision, redirection or retraining.

R. 63-64.

**V.     DISCUSSION**

The ALJ found that Plaintiff has an RFC for light work with additional postural, environmental, and mental limitations. R. 20. From a mental standpoint, the ALJ found the following limitations:

> He can understand, remember, and carry out simple tasks with simple instructions in a routine work setting. There should be no production rate work or strict production quotas. He should not have over-the-shoulder supervision and should not be involved in tandem work or teamwork. He is capable of occasional interaction with co-workers, supervisors, and the general public. There should be few, if any, changes in his work processes or work settings.

R. 20. Referring to the testimony of the vocational expert, the ALJ found that Plaintiff's RFC would permit the performance of work that exists in significant numbers in the national economy. R. 28. In making this finding, however, the ALJ made no mention of the vocational expert's testimony in response to Plaintiff's counsel's inquiry. *See id.* Plaintiff argues that this testimony "actually substantiates that Plaintiff would not be suitable for competitive employment even under the residual functional capacity assigned." *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 834. This Court agrees.

A number of courts–including this Court–have addressed the effect of an RFC that precludes over-the-shoulder supervision during the probationary period of employment and have concluded that the ALJ erred in failing to consider the effect of that limitation on the claimant's ability to engage in substantial gainful employment. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 158 (2d Cir. 2020) (and cases cited therein*); Otto v. Saul*, 3:20-cv-0060, 2021 WL 1115351 (S.D. Ohio Mar. 24, 2021); *McAfee v. Comm'r of Soc. Sec.*, 3:19-cv-125, 2020 WL 5810004

(S.D. Ohio Sept. 30, 2020). In the case presently before this Court, the vocational expert testified that the unskilled jobs identified by her would require 30 to 90 days of "at least some minimal over the shoulder supervision while the employee was learning to meet the demands of the job and learning the tasks of the job." R. 93. It appears indisputable, as Plaintiff argues, that this testimony establishes that the jobs identified by the vocational expert would not be available to a claimant who, like Plaintiff, cannot be subjected to over-the-shoulder supervision. It is significant that the ALJ wholly failed to address this portion of the vocational expert's testimony.

The Acting Commissioner argues that the ALJ reasonably relied on the vocational expert's testimony in finding that Plaintiff could perform work that exists in significant numbers despite his lessened capacity, because the vocational expert "did not change her testimony that the hypothetical individual could perform the previously identified representative jobs. . . ." *Defendant's Memorandum in Opposition*, ECF No. 15, PageID# 852-53. This Court disagrees. A fair reading of the entirety of the transcript makes clear that the vocational expert's testimony in response to Plaintiff's counsel related to and expanded on her testimony in response to the ALJ. Certainly, in ignoring this portion of the vocational expert's testimony, the ALJ failed to either reject or distinguish this portion of the vocational expert's testimony.

The Acting Commissioner cites two cases for the proposition that the ALJ did not err in relying on only a portion of the vocational expert's testimony. *Dameron v. Comm'r of Soc. Sec*. 3:19-cv-275, 2021 WL 920074 (S.D. Ohio Mar. 10, 2021); *Wright v. Comm'r of Soc. Sec*., 1:12-cv-1103, 2013 WL 3873947 (N.D. Ohio July 25, 2013). Both cases are inapposite. In *Dameron,* the vocational expert "understood the no over-the-shoulder supervision limitation to apply in the performance of the job, but not necessarily during the training period." 2021 WL 920074, at *6. In *Wright*, the RFC found by the ALJ expressly contemplated greater interaction with a

supervisor during the employee's training period. 2013 WL 3873947, at *2. In this case, by contrast, the RFC found by the ALJ eliminated, without qualification, all over-the-shoulder supervision and the vocational expert expressly testified that most unskilled jobs (and apparently the jobs identified by her) require greater supervision during the standard 30 to 90 day probationary period. In light of this record, the Court is constrained to conclude that the Commissioner has failed to carry the burden of proof assigned to the Commissioner at step five of the sequential evaluation. The decision of the Commissioner must therefore be reversed.

Plaintiff asks that the matter be remanded to the Commissioner with directions for the granting of benefits. *Plaintiff's Statement of Errors*, ECF No. 11, PageID# 839; *Plaintiff's Reply*, ECF No. 16, PageID# 871. The Commissioner has not responded to this request. *See generally Defendant's Memorandum in Opposition*, ECF No. 15. As this Court's summary of the vocational expert's testimony makes clear, all essential factual issues have been resolved and the record adequately establishes Plaintiff's entitlement to benefits. *See Faucher*, 17 F.3d at 176. The matter will therefore be remanded to the Commissioner with directions for the granting of benefits.

## VI.    CONCLUSION

The Court **GRANTS** *Plaintiff's Statement of Errors,* ECF No. 11, **REVERSES** the Commissioner's decision, and **REMANDS** the matter to the Commissioner with directions for the granting of benefits.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).

Date:  June 23, 2022                                      *s/Norah McCann King*
                                                                          NORAH McCANN KING
                                                           UNITED STATES MAGISTRATE JUDGE